[No. 6795–1–II. Division Two. March 16, 1983.]

MARY KAY QUINLAN, *as Guardian, Appellant*, v. UNIVERSITY PLACE SCHOOL DISTRICT 83, *Respondent*.

---

*James J. Mason,* for appellant.

*William A. Coats,* for respondent.

WORSWICK, J.—Mary E. Quinlan, by guardian ad litem, appeals a judgment of the Pierce County Superior Court which upheld her long–term suspension[1] from school. The University Place School District suspended her for violation of a District rule prohibiting any use of alcohol by a student before attending a school dance. The dispositive issue is whether the District's rule is in conflict with WAC 180–40–260 promulgated by the State Board of Education. We reverse, holding that it is.

The trial court's uncontested findings of fact establish that Mary attended a school dance on October 8, 1982. Immediately before she went, she and her date stopped at the home of another student to pick up another couple. While there, she drank one glass of champagne. When she entered the dance, the vice–principal and a chaperone noticed that she and others in her party had been drinking. Although some of the others were accosted, questioned and

---

[1]A long–term suspension is one that exceeds 5 consecutive school days. WAC 180–40–205(4).

requested to leave, she was not. She left with them and drove them home. When questioned by the vice–principal several days later, she admitted drinking the one glass. The vice–principal thereupon issued a notice of long–term suspension for the remainder of the semester, some 64 school days. The suspension was upheld, in turn, by the hearing examiner for the District's board, by the board itself and by the Superior Court.

Student discipline must be founded upon a rule of the school district which is consistent with state law and the rules and regulations of the Superintendent of Public Instruction and the State Board of Education. RCW 28A.58.101.[2] *See also* RCW 28A.04.132; WAC 180–40–235. The District rule under which Mary was suspended reads in its entirety as follows:

### DANCES

The doors will be locked one hour after the beginning of each dance and no one will be allowed to enter after that time (usually 9:00 p.m.). Drinking of any alcoholic beverage or use of any illegal substance before coming to a school dance will result in suspension.

WAC 180–40–260 provides in relevant part:

A long–term suspension may be imposed upon a stu-

---

[2]That statute provides, in part:

"28A.58.101 Government of schools, pupils, employees, rules and regulations for—Due process guarantees—Enforcement. Every board of directors, unless otherwise specifically provided by law, shall:

" . . .

"(2) Adopt and make available to each pupil, teacher and parent in the district reasonable written rules and regulations regarding pupil conduct, discipline, and rights, including but not limited to short–term and long–term suspensions. Such rules and regulations shall not be inconsistent with law or the rules and regulations of the superintendent of public instruction or the state board of education and shall include such substantive and procedural due process guarantees as prescribed by the state board of education under RCW 28A.04.132. Commencing with the 1976–77 school year, when such rules and regulations are made available to each pupil, teacher and parent, they shall be accompanied by a detailed description of rights, responsibilities and authority of teachers and principals with respect to the discipline of pupils as prescribed by state statutory law, superintendent of public instruction and state board of education rules and regulations and rules and regulations of the school district."

dent for violation of school district rules adopted pursuant to WAC 180–40–225, subject to the following limitations or conditions and the notice requirements set forth in WAC 180–40–265 and the hearing requirements set forth in WAC 180–40–270:

(1) The nature and circumstances of the violation must reasonably warrant a long–term suspension and the length of the suspension imposed.

(2) No student shall be suspended unless other forms of corrective action or punishment reasonably calculated to modify his or her conduct have failed or *unless there is good reason to believe that other forms of corrective action or punishment would fail if employed.*

(Italics ours.)

Mary contends that this WAC provision requires discipline to be tailored to the individual student. She argues that, because of the restriction in paragraph 2, the District could not suspend her in view of the trial court's finding of fact 13:

13. Prior to October 8th, 1982, Mary Quinlan had not been involved in any disciplinary problems at Curtis Senior High School. She was considered by the school administration to be a model student. No corrective action or punishment calculated to modify her conduct has previously failed. There is no reason to believe that other forms of corrective action or punishment other than a long–term suspension, if employed, would fail to modify her future conduct.

The District contends that the language italicized above in paragraph 2 creates an exception to the usual requirement that discipline be related to the individual student. The District argues that this language permits it to impose a predetermined fixed penalty on any student for violation of its no–drinking rule because of the trial court's finding of fact 7:

7. Prior to the adoption of the above–quoted rules student drinking prior to and at school sponsored events was a widespread and serious problem in University Place School District. The District tried other forms of corrective action such as short–term suspensions, referral to law enforcement authorities and other forms of disci-

plinary action to alleviate the problem. Lesser forms of disciplinary action were not successful in reducing the problem of drinking prior to and at school sponsored events. A parent, teacher, student and administrative group was formed to study the problem. This group recommended to the Board of Directors the adoption of the above–quoted rules.

The District seems to contend that the language relied on in paragraph 2 clearly supports the District's position because it was drafted with this very situation in mind, but that, if we do not agree it is clear, we should regard it as inept and interpret it in view of an appended comment[3] which, although not officially part of WAC 180–40–260, nevertheless "explains" or "interprets" what the State Board had in mind regarding paragraph 2. The District contends that, because the comment is an "interpretation" of the WAC text, we should apply the principle that an agency's interpretation of its own rules is to be given considerable weight. *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 89 L. Ed. 1700, 65 S. Ct. 1215 (1945); *Vliet v. Department of Labor & Indus.*, 30 Wn. App. 709, 638 P.2d 112 (1981). We agree with Mary and disagree with the District.

██ The language of WAC 180–40–260(2) is a simple example of parallel clauses (*see* J. Kierzek & W. Gibson, *MacMillan Handbook of English* 78 (5th ed. 1965); D. Davidson, *American Composition & Rhetoric* 225, 614 (3d ed. 1953)). It is clear when read in light of elementary rules of the language. Parallel clauses must be read in conjunction with their common antecedent. To make the point

---

[3] "COMMENT: Alternatives to Suspension—Section (2)

"As a general rule, this new section will require that a suspension be justified as necessary to correct the behavior of the *particular student*. Rules establishing an automatic suspension for a particular form of misconduct are therefore prohibited as a general rule. However, it is conceivable that a rule calling for an automatic suspension of a pre–established length can be justified in limited cases on the grounds that: (1) the offense sought to be prohibited is of a widespread and serious nature within the school or district, and (2) various alternatives to suspension have been attempted a substantial number of times previously without effect or reduction in the problem."

even more apparent, paragraph 2 can be read as two separate but related sentences, *viz*: "No student shall be suspended unless other forms of corrective action or punishment reasonably calculated to modify his or her conduct have failed" and "[n]o student shall be suspended unless there is good reason to believe that other forms of corrective action or punishment would fail if employed." Both clauses impose a condition precedent to suspension: the first, that other punishment has been inflicted and has failed to attain the desired modification of the student's conduct; the second, that other punishment has not been inflicted but good reason exists to believe that the desired result, still modification of the student's conduct, would not be attained. Unless the desired result in both clauses is the same, the expression "would fail" in the second clause is left dangling and becomes meaningless. Moreover, there is absolutely no indication in WAC 180–40–260(2) that the desired result in the second clause is something other than specified in the first clause.

There is a difference between analysis of language and interpretation of intent. No such interpretation is required here and we need not resort to, or consider arguments regarding the use of, any commentary. In view of the trial court's finding of fact 13, the District's no–drinking rule, as applied to Mary, was plainly invalid.

The judgment is reversed, the suspension is vacated and set aside and the District is ordered to release to appellant the examination grades and credits for the first semester 1982–83 which have been withheld pursuant to this court's previous order pendente lite.

PETRICH, C.J., and PETRIE, J., concur.